61 F.3d 903
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Linda DAY, Plaintiff-Appellant,
v.
CITY OF SOUTHFIELD, Defendant-Appellee.
 No. 94-1119.
 United States Court of Appeals, Sixth Circuit.
 July 21, 1995.
 
 Before: JONES, NELSON, and RONEY, Circuit Judges.*
 PER CURIAM.
 
 
 1
 Plaintiff Linda Day is appealing the summary judgment for Defendant City of Southfield ("City") in this employment discrimination case. We find that the magistrate judge correctly determined all of the issues in this case, and thus affirm the decision of the district court adopting the magistrate judge's Report and Recommendation granting summary judgment to the City.
 
 I.
 
 2
 Linda Day, a black female, began her employment as a public safety technician for the City of Southfield on May 1, 1990. Day successfully completed her six-month probationary training as a police dispatcher, and was granted full-time career status on November 2, 1990. Day had been working approximately two and a half months as a full-time dispatcher when the critical event resulting in her discharge occurred. In the City's Public Safety Department Dispatch Room, call takers answer the incoming emergency calls, record the relevant information on a dispatch card, and notify either a police or fire dispatcher of the request for service by giving the appropriate dispatcher the dispatch card. The police or fire dispatcher then dispatches the appropriate emergency service to the scene of the emergency.
 
 
 3
 On January 28, 1991, at 18:48 hours (6:48 p.m.), Supervisor Patricia LaPorte, who was Day's supervisor at the time, answered an incoming call involving the fatal accident of a pedestrian. She gave the dispatch card to Day, who dispatched emergency units to the scene. Cheryl Fraser, who was on duty as a call taker that day, commented to LaPorte that the subject of the fatality call sounded similar to the description of a disoriented subject call that had come in earlier. LaPorte searched for the disoriented subject card, which Day ultimately produced by showing that she had fastened that card to the back of the fatality card.
 
 
 4
 Further investigation by LaPorte revealed that Cheryl Fraser had taken an emergency call about a disoriented subject walking along a stretch of roadway, and that she made out a dispatch card and time-stamped it at 18:23 hours (6:23 p.m.). Cheryl Fraser testified that she then placed the dispatch card at eye-level on Day's dispatch console, but she did not recall whether Day saw her place the card there. According to Day, she was away from her dispatch station at the time, Fraser placed the card on her console, because she was checking information on a suspected stolen credit card at the mobile data terminal. Day testified that she did not become aware of the disoriented subject dispatch card until she was occupied with the fatal accident run. She explained that at that time there were no units available for the disoriented subject run which was now twenty-five minutes old, and it appeared from what Fraser had said that the disoriented subject and the pedestrian fatality were related. Consequently, she attached the disoriented subject card to the fatal accident card to prevent duplication of the runs.
 
 
 5
 LaPorte testified that when she asked Day why she had not dispatched a unit in response to the disoriented subject card, Day responded first that no units were available, and when LaPorte noted that there were units available for dispatch, Day said that the card did not show that the subject was walking on a roadway and thus the call was not a priority.
 
 
 6
 LaPorte then submitted a report summarizing her investigation to the Operations Director, Catherine McCormick. McCormick reviewed the report, and suspended Day with pay pending a final decision. McCormick notified Day and her union of a fact-finding meeting to be held on February 4, 1991, to address an internal investigation and complaint which could result in disciplinary action. Day attended the meeting with her union representative.
 
 
 7
 Day was discharged on February 7, 1991. She filed a grievance with her union, but the union declined to take her case. Day then filed a complaint with the EEOC on March 31, 1991. The EEOC dismissed the complaint, and issued a right to sue letter on September 27, 1991. On that date or shortly thereafter, Day, acting pro se, filed the complaint in the instant action in federal district court, alleging racial discrimination related to her employment in violation of federal and Michigan state civil rights laws.
 
 
 8
 Thereafter, Day retained counsel, who with the court's permission, filed an amended complaint on April 30, 1993. The amended complaint stated the following eight causes of action: a 42 U.S.C. Sec. 1981 claim (Count I); a 42 U.S.C. Sec. 1983 claim (Count III); breach of contract claim (Count V); intentional infliction of emotional distress claim (Count VI); wrongful discharge claim (Count VII); retaliation claim (Count VIII); and Title VII and Elliot-Larsen Civil Rights Act discrimination claims (Counts II and IV).
 
 
 9
 The parties conducted discovery, and on September 27, 1993, the City filed a motion for summary judgment. After further filings, on December 30, 1993, Magistrate Judge Steven Pepe issued a Report and Recommendation to grant the City's motion, by dismissing Count I under Federal Rule of Civil Procedure 12(b)(6), dismissing Counts V and VII since Day voluntarily withdrew these claims, and granting summary judgment on the remaining counts. This recommendation was adopted by the district court. Day filed objections and now appeals this determination, with respect to all of her claims except Counts V and VII.
 
 II.
 
 10
 Day first argues that the district court[1] erred in dismissing her claim brought under 42 U.S.C. Sec. 1981. The district court found that Day did not state a claim under 42 U.S.C. Sec. 1981 because prior to the enactment of the Civil Rights Act of 1991 ("1991 CRA"), the section did not create a cause of action for racially discriminatory action engaged in after an employment relationship had begun. J.A. at 128. The district court found that Day's cause of action accrued in January and February 1991, and her complaint was filed in September 1991; all of which was prior to the November 1991 effective date of the 1991 CRA amendments. Id. at 127. The district court found that under this court's holding in Harvis v. Roadway Express, Inc., 973 F.2d 490, 497 (6th Cir.1992), aff'd sub nom. Rivers v. Roadway Exp., Inc., 114 S.Ct. 1510 (1994), the 1991 amendments to Sec. 1981 are not applicable retroactively, and thus the Supreme Court's holding in Patterson v. McLean Credit Union, 491 U.S. 164, 171 (1989) governs Day's claim. J.A. at 128. The district court found that under Patterson, Day has no cause of action. Id.
 
 
 11
 This court reviews a district court's dismissal for failure to state a claim for which relief can be granted de novo. Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir.1987). On review, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff can undoubtedly prove no set of facts in support of his claims that would entitle him to relief. Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert. denied, 498 U.S. 867 (1990).
 
 
 12
 The district court did not err in its determination. The district court was correct in determining that under Patterson, Day has no cause of action under Sec. 1981, as that case clearly held that racial harassment in course and conditions of employment does not state a cause of action under Sec. 1981. See 491 U.S. at 178-79, 182-83. Furthermore, the district court was correct that the 1991 CRA does not apply retroactively. See Rivers, 114 S.Ct. at 1518-19 (holding that "Patterson provides the authoritative interpretation of the phrase 'make and enforce contracts' in the Civil Rights Act of 1866 before the 1991 amendment went into effect on November 21, 1991," and that the 1991 amendment, being a legislative enactment lacking a retroactive application provision, is not to be applied to cases before that date); Harvis, 973 F.2d at 497.
 
 
 13
 Day argues that Harvis is distinguishable because that case was pending on appeal when the 1991 CRA was passed, whereas this case was filed a mere two months prior to the 1991 CRA passage. Day Br. at 23. This court has clearly held, however, that the 1991 CRA "does not apply retroactively to conduct that occurred before the Act became law." Holt v. Michigan Dep't of Corrections, 974 F.2d 771, 773 (6th Cir.1992) (emphasis added) (citing Vogel v. City of Cincinnati, 959 F.2d 594, 597-98 (6th Cir.), cert. denied, 113 S.Ct. 86 (1992)), cert. denied, 114 S.Ct. 1641 (1994). Day has no claim under 42 U.S.C. Sec. 1981.
 
 
 14
 The rest of the issues Day raises pertain to her claims on which the district court granted summary judgment to the City. This court reviews a district court's grant of summary judgment de novo. City of Mount Clemens v. United States Envt'l Protection Agency, 917 F.2d 908, 914 (6th Cir.1990). "[I]n a motion for summary judgment, 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.' " Russo v. City of Cincinnati, 953 F.2d 1036, 1041-42 (6th Cir.1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and citing Vollrath v. Georgia-Pacific Corp., 899 F.2d 533, 534 (6th Cir.), cert. denied, 498 U.S. 940 (1990)).
 
 
 15
 Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990). This means that after the opportunity for discovery, if the moving party demonstrates that there is no genuine issue of material fact as to the existence of any element essential to the non-moving party's case, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once this initial burden is met, it becomes the burden of the non-moving party to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 16
 Day next argues that the district court erred in granting summary judgment for the City on her claim brought under 42 U.S.C. Sec. 1983. In her amended complaint, Day claims that the City violated her rights under Sec. 1983 by discharging her without affording her "a constitutionally sufficient pre-termination hearing prior to her discharge." J.A. at 95. She claims that the City has thus violated her right to due process under the Fourteenth Amendment.
 
 
 17
 The district court first observed the following:
 
 
 18
 It is beyond dispute that, once a public employee acquires a property interest in a job, she may not be terminated without some sort of pretermination hearing. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-43 (1985); Perry v. Sindermann, 408 U.S. 593, 599 (1972); Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972). The pretermination hearing is necessary to give the employee an opportunity to present her side of any disputed factual issues and to argue for the decision maker to exercise any discretion in the employee's favor, and to help prevent erroneous decisions. Loudermill, 470 U.S. at 543.
 
 
 19
 J.A. at 129 (footnote omitted). The district court noted that the parties do not dispute that Day had a property interest in her job. Id. at 129 n. 4. Under Loudermill,
 
 
 20
 [t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee."
 
 
 21
 470 U.S. at 546 (citations omitted). The district court found that Day received notice that a hearing was to be held which could result in disciplinary action, that the notice made clear which incident was being investigated, and that at the fact-finding meeting Day was provided the opportunity to present her side of the story. The district court concluded that the Loudermill requirements had been satisfied.[2] We agree.
 
 
 22
 Loudermill's pretermination opportunity to respond is not required to be an elaborate opportunity to respond but " 'an initial check against mistaken decisions--essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and supported by [sic] the proposed action.' " Guarino v. Brookfield Township Trustees, 980 F.2d 399, 409 (6th Cir.1992) (quoting Loudermill, 470 U.S. at 545-46). Furthermore, the "fact that post-deprivation remedies are available allows for an even less formal pre-termination hearing." Id. (citing Loudermill, 470 U.S. at 546-47). We find that because Day was given notice of "at least the sense of the charges against [her]," and she availed herself of the opportunity to respond to those allegations, her due process rights under Loudermill have been satisfied. See id. The City is entitled to summary judgment on Day's Sec. 1983 claim.
 
 
 23
 Day next argues that the district court erred in granting summary judgment for the City on her claim of intentional infliction of emotional distress. Intentional infliction of emotional distress is a state law tort claim; thus in this case the court must apply Michigan state law. The Michigan Supreme Court has yet to recognize this tort. See Roberts v. Auto-Owners Ins. Co., 374 N.W.2d 905, 906 (Mich.1985). Nevertheless, the Michigan Court of Appeals has, and the elements necessary to make out a prima facie case of intentional infliction of emotional distress are those stated in the Restatement (Second) of Torts Sec. 46: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. See Taylor v. Blue Cross/Blue Shield of Michigan, 517 N.W.2d 864, 871 (Mich.Ct.App.1994). Section 46 of the Restatement explains that a defendant is only liable "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts Sec. 46, comment d.
 
 
 24
 We agree with the district court that the City's decision to discharge Day for failing to dispatch a police car in response to an emergency call, whose subject was later fatally injured, is not "extreme and outrageous conduct" necessary to make out a claim of intentional infliction of emotional distress. The district court appropriately granted the City summary judgment on this claim. See Wendt v. Auto Owners Ins. Co., 401 N.W.2d 375, 378 (Mich.Ct.App.1986) (affirming lower court's grant of summary judgment where conduct pled was not sufficiently extreme or outrageous to make out claim of intentional infliction of emotional distress); Ferrell v. Vic Tanny Int'l, Inc., 357 N.W.2d 669, 674 (Mich.Ct.App.1984) (same).
 
 
 25
 Day next argues that the district court erred in granting summary judgment for the City on her claim of retaliation brought under the Elliot-Larsen Civil Rights Act ("ELCRA"), Mich.Comp.Laws Ann. Secs. 37.2101-37.2804. Again, this is a state law claim, and Michigan substantive law must be applied. The ELCRA prohibits retaliation or discrimination against a person "because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich.Comp.Laws Ann. Sec. 37.2701(a).
 
 
 26
 In order to establish a prima facie case of unlawful retaliation under Elliot-Larsen, a plaintiff must establish (1) that he opposed violations of the Act or participated in activities protected by the Act, and (2) that the opposition or participation was a significant factor in an adverse employment decision.
 
 
 27
 Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1310 (6th Cir.1989). For the protected activity engaged in by a plaintiff to be a "significant factor," the plaintiff must show that it was one of the reasons for her discharge. Polk v. Yellow Freight Sys., Inc., 876 F.2d 527, 531 (6th Cir.1989). After describing its review of the evidence the district court concluded that Day had failed to show either that she had engaged in a protected activity under ELCRA, or that her termination was in any way connected to any protected activity that she might have engaged in. J.A. at 135-37.
 
 
 28
 Day argues that contrary to the district court's determination, she was engaged in a protected activity, because as her testimony demonstrates, she had complained repeatedly about a racially hostile environment during her employment with the City. Day Br. at 36. Day testified that during her training period she verbally complained to Valerie Crump, the EEO Coordinator, that the dispatch room was a racially hostile environment, that she felt she was being discriminated against, and that she was receiving different supervisory treatment than the white employees. J.A. at 257-58. Day also testified that her evening shift supervisor during her training period, Rex Martin, alluded to her using drugs and "to other things that have already been established as bias toward blacks." J.A. at 243. Day has presented no evidence, other than her own testimony, that she registered a complaint of racial discrimination against Mr. Martin at any time during her employment. Day claims that "several of the critical progress reports she received from Rex Martin were received after her complaints concerning his behavior." Day Br. at 34. The fact remains, however, that those progress reports did not prevent Day from becoming a full-time police dispatcher.
 
 
 29
 Assuming, arguendo, that Day was engaged in a protected activity which the City knew about, she still has presented no evidence that this activity was a reason for her discharge. The City argues that Martin was not consulted regarding the decision to terminate Day. City Br. at 25. Day has presented no evidence that any complaints of racial discrimination that she may have registered had any bearing on the decision to discharge her. Consequently, she has failed to make out a claim of retaliation under ELCRA.
 
 
 30
 Lastly, Day argues that the district court erred in granting summary judgment for the City on her civil rights claims brought under Title VII, 42 U.S.C. Sec. 2000e, and ELCRA. Day argues that she was treated differently than other similarly situated individuals, and that the disparate treatment was because of her race. Day Br. at 39. As the district court appropriately noted, the standards for proving a violation of both the federal and state discrimination claims are identical. See Victorson v. Department of Treasury, 482 N.W.2d 685, 690 (Mich.1992); J.A. at 137-38.
 
 
 31
 As the district court correctly noted, the order of proofs necessary for a plaintiff to prevail on a Title VII claim, is (1) plaintiff must set out a prima facie case of unlawful discrimination; if she does so, then (2) the defendant must present a legitimate, nondiscriminatory reason for the challenged action; if it does so, then (3) plaintiff must prove that defendant's explanation is pretextual and that the defendant intentionally discriminated against the plaintiff. St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2746-47 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981).
 
 
 32
 We need not determine whether Day established a prima facie case of discrimination because, assuming arguendo, that she did establish a prima facie case, we agree with the district court's finding that Day failed to show that the City's asserted reason for Day's discharge was pretextual. The district court applied this court's standard in Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382 (6th Cir.1993) which explained that
 
 
 33
 [t]he employment discrimination plaintiff may demonstrate pretext by showing: (1) that the stated reasons for his firing had no basis in fact; (2) that the stated reasons for his firing were not the actual reasons; and (3) that the stated reasons for his firing were insufficient to explain the discharge.
 
 
 34
 Id. at 1390.[3] In Pickrel, this court granted summary judgment after holding that the plaintiff in an age discrimination case had not come forward with sufficient evidence from which a reasonable fact-finder could conclude that the defendant's proffered nondiscriminatory explanation was pretext. Id. at 1394-95. Based on this holding, the district court determined that "[i]n the context of a motion for summary judgment ... once a nondiscriminatory explanation has been offered, the conflicting evidence must be such that a fact-finder could find for the plaintiff." J.A. at 145. After careful application of Pickrel to the facts of this case, the district court determined that "in the present record there is not sufficient evidence from which a reasonable fact-finder could conclude that the asserted reasons for Ms. Day's discharge were a pretext for racial discrimination." J.A. at 147.
 
 
 35
 Day argues that the district court erred in deciding this issue on summary judgment because there were unresolved issues of fact with regard to whether Fraser transmitted the dispatch card properly. Day is wrong, however, that these are issues of material fact precluding summary judgment. Even if it were determined that McCormick erred in concluding that Day was at fault, this does not constitute evidence that Day's discharge was racially motivated. As the district court noted, "[e]ven a mistaken belief that constitutes a legitimate reason for discharge can justify a firing as not being for racial reasons so long as the mistake was a good faith mistake and not a mask for racial discrimination." J.A. at 142.
 
 
 36
 The district court appropriately applied the analytical framework of Pickrel to the facts of this case, and correctly determined that Day had not presented sufficient evidence so that a reasonable jury could find that the City's reasons for Day's discharge were pretextual.
 
 III.
 
 37
 For the foregoing reasons we affirm the decision of the district court granting summary judgment to the City.
 
 
 
 *
 The Honorable Paul H. Roney, United States Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 [1]
 All references to the district court in this discussion technically are references to the magistrate judge's Report and Recommendation
 
 
 [2]
 Day also argued to the district court that under Board of Regents v. Roth, 408 U.S. 564 (1972), she was entitled to more due process because her reputation was at stake. The district court correctly concluded that Roth was inapplicable both because Day's reputation was not in issue, and because even if it were, Roth does not require more pretermination protection than Loudermill. See J.A. at 131; 408 U.S. at 573-74
 
 
 [3]
 This court has recently reiterated this standard:
 To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir.1993) (emphasis added and quotation marks omitted).
 Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir.1994). Under Manzer, "once the employer has come forward with a nondiscriminatory reason for firing the plaintiff, we hold that the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." Id. at 1083.