Julia A. ANDERSON, Plaintiff,

v.

MEAD JOHNSON NUTRITIONAL GROUP, BRISTOL–MYERS SQUIBB COMPANY, Defendant.

No. 1:94–CV–223.

United States District Court, E.D. Tennessee.

Jan. 8, 1996.

Charles P. Dupree, Chattanooga, TN, for Julia A. Anderson.

Paul R. Leitner, Michael K. Alston, Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napo, Chattanooga, TN, for Bristol–Myers Squibb Company, Inc., Mead Johnson Nutritional Group.

## MEMORANDUM

COLLIER, District Judge.

Before the Court is a motion for summary judgment brought by the defendant, Mead Johnson Nutritional Group, Bristol–Myers Squibb Company, pursuant to Rule 56 of the Federal Rules of Civil Procedure (Court File No. 32). In this action, the plaintiff, Julia Anderson, brings a claim of discrimination based upon her race and sex against the defendant alleging that the defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* and the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. §§ 4–21–101 to –903 (Court File No. 1).

For the reasons that follow, this Court will GRANT the motion for summary judgment.

## I. *FACTUAL ALLEGATIONS*

Julia Anderson, the plaintiff, is a Black woman who was hired by the defendant, Mead Johnson Nutritional Group, Bristol–Myers Squibb Company, as a medical sales representative in December of 1986 (Court File Nos. 1, 33, Complaint, Affidavit of Steve Rowland). The duties of a medical sales representative involve calling doctors, hospitals and pharmacies for the purpose of stimulating sales, prescriptions and orders for the company's products (Court File No. 1, Complaint). Mead Johnson alleges that due to her previous work experience and education, Ms. Anderson was eligible for, and did receive, a base salary which was $1,000 above the salary range minimum for her position (Court File No. 33, Affidavit of Steve Rowland). Ms. Anderson, on the other hand, claims when she was hired she received a starting salary which was lower than that of two other sales representatives within her district who were hired at approximately the same time (Court File No. 54, Affidavit of Julia Anderson). The record indicates that during her employment with Mead Johnson, Ms. Anderson received merit increases that were within or above the defendant's guidelines for medical sales representatives based upon her annual performance ratings (Court File No. 33).

In the latter part of 1991, Humana East Ridge Hospital alleged that Ms. Anderson was ordering excess, unnecessary product which was actually thrown away by the hospital (Court File No. 33, Affidavit of Steve Rowland, Exh. 2). Also at this time, Mr. Steve Rowland, Ms. Anderson's District Sales Manager, believed Ms. Anderson was falsifying order records (Court File No. 33, Affidavit of Steve Rowland, Exh. 2). In November of 1992, Ms. Anderson received an overall performance rating of "minimally effective" (Court File No. 33). Consequently, the defendant discussed with Ms. Anderson discrepancies in her call cards, activity reports and expense reports (Court File No. 33). The defendant claims the plaintiff failed to explain these discrepancies when given the opportunity (Court File No. 34). Ms. Anderson, however, states she responded to each allegation raised against her (Court File No. 54, Affidavit of Julia Anderson).

The evidence presented indicates Ms. Anderson was placed on a Performance Improvement Program to address her alleged performance problems (Court File No. 33). According to the defendant, Ms. Anderson continued to have problems with performing her duties (Court File Nos. 33, 34, Affidavit of Steve Rowland, Affidavit of Jeff England). In January of 1993, Ms. Anderson received another overall performance rating of "minimally effective" (Court File No. 34, Affidavit of Jeff England). The defendant continued to discover discrepancies in Ms. Anderson's call card reports (Court File No. 34). Ms. Anderson was confronted with these discrepancies by the management of Mead Johnson Nutritional Group, Bristol–Myers Squibb Company, including the new District Sales Manager, Jeff England, who had replaced Mr. Rowland in the early part of 1993 (Court File No. 34). On this occasion also, Ms.

Anderson was given the opportunity to explain these discrepancies. Once again, the defendant asserts Ms. Anderson failed to explain the discrepancies (Court File No. 34), but, according to Ms. Anderson, she responded to these allegations (Court File No. 54).

In addition, Ms. Anderson contends that during the time of her employment with the defendant, Steve Rowland and Rich DeBone, Mr. Rowland's supervisor, continuously commented about her race and sex and the " 'problems' in the Chattanooga market" (Court File No. 54, affidavit of Julia Anderson). The plaintiff also states in her affidavit that Mr. Rowland and Mr. DeBone spoke as if they considered her race and sex to be a limiting factor in her work; Mr. DeBone had advised her in early 1992 that he felt she had gone as far as she could in the Chattanooga area because of racial prejudices; and Mr. Gary Duberly, the former regional manager, had advised Mr. DeBone the racial bias was so bad in Chattanooga, Ms. Anderson would not be able to establish a direct sales contract with Humana East Ridge Hospital (Court File No. 54). Ms. Anderson cites other instances she believes indicate discrimination took place against her while employed by the defendant including, one, a statement by Steve Rowland suggesting he could do whatever he pleased to her because, for purposes of her employment, he was Bristol Myers and, two, a threat made by Rich DeBone indicating he would terminate her "in a heartbeat" if so directed by the company (Court File No. 54).

According to the record, Jeff England, along with the other management personnel of Mead Johnson and Company, carefully reviewed the facts and documentation surrounding the discrepancies in Ms. Anderson's records and discussed them with the plaintiff (Court File No. 34). In April of 1993, the management of Mead Johnson terminated plaintiff, in accordance with company policy, for falsification of company records (Court File No. 34). Other than the allegations of the plaintiff, there is no evidence indicating Steve Rowland played an active role in the decision to terminate her.

■ The plaintiff did submit the complete two-volume deposition of Julia Anderson apparently for consideration by the Court in this matter. However, plaintiff failed to direct the Court's attention to any particular part of the deposition, nor did plaintiff include any excerpts from this deposition in the brief opposing the defendant's motion for summary judgment. Considering the length of the deposition, two hundred seventy-four pages to be exact, with some 48 separate exhibits, it would have been a substantial burden for the Court to parse through the testimony contained in this deposition searching for evidence sufficient to defeat the defendant's motion. Hence, while the Court read the deposition, the Court did not consider anything in the deposition other than excerpts presented by the parties. Local Rule 26.2 states,

> Pursuant to the provision of Rule 5(d) of the Federal Rules of Civil Procedure, *depositions,* interrogatories, requests for production of documents, and requests for admissions shall not be filed with the clerk except by order of the court. Neither shall responses to these requests be filed except by order of the court. *However, relevant portions of discovery documents may be filed in support of motions.*[1] (Emphasis added).

No order of the Court was sought, thus the two-volume deposition was improperly submitted to the Court.

## II. ANALYSIS

### A. Summary Judgment Standard

Under *Fed.R.Civ.P.* 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists, *Lansing Dairy,*

---

1. The Court also notes the Sixth Circuit held in *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir.1989), "The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." This statement also suggests that a court does not have an obligation to search the record to establish a genuine issue of material fact.

Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994); Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc., 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Oakland Gin Co., Inc. v. Marlow, 44 F.3d 426, 429 (6th Cir. 1995); City Management Corp. v. U.S. Chemical Co., Inc., 43 F.3d 244, 250 (6th Cir.1994).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The non-moving party may not rest on its pleadings but must come forward with some significant probative evidence to support its claim. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Lansing Dairy, 39 F.3d at 1347; Horsemen's Benev., 20 F.3d at 1411. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323, 106 S.Ct. at 2553.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435–36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence pre-

sented, it may enter a summary judgment. Id.; Lansing Dairy, 39 F.3d at 1347; Horsemen's Benev., 20 F.3d at 1411.

In her complaint, Ms. Anderson alleges that her evaluations, as well as her discharge and lower pay, were the result of discrimination based upon her race and sex. The defendant contends, however, that in light of the evidence presented in the record, it is entitled to judgment as a matter of law because the plaintiff has failed to present facts from which a reasonable jury could conclude that Ms. Anderson was indeed discriminated against because of her race and sex.

### B. *Employment Discrimination in General*

■ Tennessee is an employment-at-will state. This means an employee can be fired for good reason, bad reason, or no reason at all. Harney v. Meadowbrook Nursing Center, 784 S.W.2d 921, 922 (Tenn.1990). Consequently, the Court's role is not to determine whether an employer's decision to fire an employee was wise, right or otherwise. An employee may allege he has been subjected to a great deal of mistreatment by a supervisor. This Court does not condone such behavior; yet, even assuming the allegations of poor treatment by one's employer are true, a court has no role in curing those wrongs unless the employer's actions violate the law. Ms. Anderson has cited Title VII and the Tennessee Human Rights Act as the basis for her claims against the defendant. An analysis of the plaintiff's claims under Title VII will dispose of the Tennessee Human Rights Act claims as well. See Frizzell v. Southwest Motor Freight, Inc., Matthew Cacace, 906 F.Supp. 441 (E.D.Tenn.1995). Therefore, the claims under these respective statutes will be considered together.

### C. *Race Discrimination*

■ In order to establish a *prima facie* case of race discrimination, a plaintiff may either present direct evidence of intentional discrimination on the part of the defendant or show the existence of circumstantial evidence which creates an inference of discrimination. Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir.1995). Un-

der the latter approach, the plaintiff must prove that (1) she belongs to a racial minority, (2) she was satisfactorily performing her job, (3) despite this performance she was terminated, and (4) she was either replaced by a non-minority worker or similarly situated non-protected employees were treated more favorably than the plaintiff.[2] *Robinson v. Oakwood Hospital,* 1994 WL 279386, at *3 (6th Cir. June 22, 1994). The significance of the *prima facie* case is that it permits an "inference of discrimination." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995). Therefore, at the *prima facie* stage, all the plaintiff must establish is that her discharge raises an inference of discrimination. *Robinson* at *3.

■ If the plaintiff proves her *prima facie* case then, in order to prevail, the defendant must produce a legitimate, nondiscriminatory reason for its action. Once the defendant produces the legitimate reason, the presumption created by the *prima facie* case is rebutted and drops from the case. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). If, however, after the defendant has produced such a reason or reasons, the plaintiff can establish that the defendant's proffered reasons were not its true reasons but were a pretext for discrimination, then the plaintiff carries the case. *Garrett v. Child Guidance Center of Greater Cleveland,* 1993 WL 127945, at *2 (6th Cir. April 22, 1993); *Irvin v. State of Tennessee,* 1987 WL 38565, at *2 (6th Cir. April 20, 1987). The burden of persuasion always remains with the plaintiff. *Sunstrom v. Schering–Plough Corp.,* 856 F.Supp. 1265, 1270 (E.D.Tenn.1994).[3] In other words, if there is sufficient evidence to

reject the defendant's reasons, this does not necessarily compel judgment for the plaintiff; the plaintiff must have proven the defendant intentionally discriminated against her because of her race. *Hicks,* 509 U.S. at ——, 113 S.Ct. at 2749.

### 1. *Prima Facie Case*

Ms. Anderson has not presented any direct evidence of intentional discrimination; hence, the Court will consider her claim of racial discrimination by way of the above-mentioned factors.

■ **a. *Racial minority.*** Both parties concede that Ms. Anderson is of the Black race (Court File Nos. 1, 35). Therefore, this element of the *prima facie* case has been established.

■ **b. *Satisfactory performance.*** The affidavits of Steve Rowland and Jeff England, both of whom were Ms. Anderson's supervisors at one time or another, indicate that Ms. Anderson had discrepancies in her various reports, was delinquent in her paperwork and had, on occasion, ordered excess products for a hospital (Court File Nos. 33, 34). Even after placing Ms. Anderson in a Performance Improvement Program, the defendant contends Julia Anderson continued to perform poorly (Court File No. 37, affidavit of Jeff England). There is also evidence in the record stating Ms. Anderson was given opportunities to explain her performance, i.e. the discrepancies in her reports, but failed to do so (Court File Nos. 33, 34).

However, in her affidavit, Ms. Anderson counters the defendant's allegations. She

**2.** Regarding the fourth element of a *prima facie* case, the Sixth Circuit held, in *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1247 (6th Cir.1995), that a plaintiff may satisfy the fourth element of the prima facie case by showing either that the plaintiff was replaced by a person outside of the protected class *or* that similarly situated non-protected employees were treated more favorably than the plaintiff. According to the court, the central inquiry in evaluating whether the plaintiff has met her initial burden is whether the circumstantial evidence presented is sufficient to create an inference of discrimination. *Talley* at 1246. Therefore, the Sixth Circuit noted, where courts have found that a Title

VII plaintiff presented a prima facie case without proof of the employer's further solicitation of applications, some additional evidence, such as the favorable treatment of non-protected employees, was set forth by the plaintiff to establish the inference of discrimination. *Talley* at 1247.

**3.** Although *Sunstrom* is a case involving claims of sex and age, the court in this case acknowledges that there is an established allocation of proof in employment discrimination cases and that this pattern is applicable in Title VII actions in general. *Sunstrom* at 1270. Therefore, this Court believes there is no need to distinguish this case from the case at bar.

claims, first, she never falsified company records and second, she explained the alleged discrepancies in her reports when asked to do so by Steve Rowland and Rich DeBone (Court File No. 54). In addition, Ms. Anderson's affidavit states the memos of the day-to-day contacts she had with doctors and hospitals were positive, thereby demonstrating her performance at Mead Johnson was not poor (Court File No. 54). Ms. Anderson submits various memoranda with her affidavit to support the notion she was performing satisfactorily. One of the memoranda was written by Steve Rowland in July of 1992 regarding a contract with a hospital,

> Julia has been working overtime in Chattanooga at Eastridge Hospital to implement the Humana–Mead Johnson contract that will make us house formula at this important, mostly private hospital. It has not been easy getting us to the point where we can claim about half of the births we stand to gain upon successful implementation of the contract ... Julia has gone undercover at night to work the third shift for her information ... She has stood tall and fast under relentless pressure from our infamous competition.

(Court File No. 54, attachment 4, memo from Steve Rowland July 9, 1992).

The evidence presented by the plaintiff tends to rebut the defendant's claim of an unsatisfactory performance on the part of Ms. Anderson. In addressing a motion for summary judgment, the Court is not called to weigh the credibility of the witnesses or judge the truth of the matter. Therefore, viewing the evidence in a light most favorable to the nonmoving party, the Court finds this element of the *prima facie* case has been met.

■ **c. *Termination despite satisfactory performance and replacement by a non-minority.*** The record demonstrates that Ms. Anderson was terminated from her employment in April of 1993 and was replaced by a White male (Court File No. 54, affidavit of Julia Anderson).[4] Accordingly, the Court holds that the plaintiff has established a *prima facie* case of race discrimination.

## 2. *Defendant's Reason for Termination*

As noted above, once a *prima facie* case has been established, the defendant has the opportunity to produce a legitimate, nondiscriminatory reason for an employee's termination. If the defendant presents such a reason, then the inference created by the *prima facie* case disappears. *Hicks,* at ——, 113 S.Ct. at 2747. According to the evidence presented by the defendant, after a thorough investigation of the circumstances, the management of Mead Johnson believed Julia Anderson was falsifying company records and therefore terminated her on that basis (Court File No. 34). The affidavit of Jeff England suggests it is Mead Johnson's policy to terminate an employee on such grounds (Court File No. 34). Hence, the Court finds the reason presented by the defendant to be sufficient to warrant termination. This Court further notes that although, due to Ms. Anderson's denial of the falsification of records, there may be a question as to whether the plaintiff *actually* engaged in such activity, the Sixth Circuit has held even an employer's mistaken belief that constitutes a legitimate reason for discharge can justify a firing as not being for racial reasons so long as the mistake was a good faith mistake and not a mask for racial discrimination. *Day v. City of Southfield,* 1995 WL 433587, at *7 (6th Cir. July 21, 1995).

## 3. *Anderson's Proof of Pretext*

■ After the defendant has proffered a legitimate reason for the employee's discharge, the plaintiff can still prevail if she proves that the defendant's reason for her termination was a pretext for discrimination. However, this does not mean that a plaintiff must simply provide evidence which contradicts the nondiscriminatory reason presented

4. The Court also notes the deposition of Julia Anderson refers to the names of certain individuals who, at the time, appeared to be similarly-situated employees. According to her deposition, these individuals were treated more favorably with respect to the compensation received by a sales representative for his or her accomplishments (Anderson deposition, pp. 134–136). Had this been the only evidence on this issue, the Court would have been compelled to find against plaintiff because of the Court's inability to consider the deposition.

by the defendant. A plaintiff must prove that the defendant intentionally discriminated against her *because of* her race. *Hicks*, 509 U.S. at ——, 113 S.Ct. at 2749.

Title VII does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action by reason of ... race. That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct.

*Hicks,* at ——, 113 S.Ct. at 2756.

Due to the conflicting evidence present in the record, there is a possibility the defendant's reason for terminating Ms. Anderson is a mask for some other reason and a jury could find the defendant's reason to be unpersuasive. One of the memoranda submitted by the plaintiff, which was written by Steve Rowland, refers to Ms. Anderson as a "pain in the butt" and suggests one of the doctors in the area told Mr. Rowland that Mead Johnson needed to get someone else (Court File No. 54, attachment 7, memo from Steve Rowland July 6, 1990). However, even in light of all this, as stated above, Ms. Anderson cannot prevail against the defendant's motion for summary judgment unless she presents enough evidence from which a jury could infer she was terminated because of her race.

The plaintiff makes reference to a statement made by Rich DeBone which claimed she had gone as far as she could in the Chattanooga area because of racial prejudices (Court File No. 54). She also submits several memoranda written by Steve Rowland and Jeff England which acknowledge Ms. Anderson's concerns about the racial prejudices present in the Chattanooga area.

Julia, my visit with you was very helpful in fully understanding the state of your territory at the present time. You have done very well in the area under some extremely adverse circumstances, and I appreciate your sharing them with me ... I assure you I will not sit idly by and see any unfairness to you take place in Chattanooga or anywhere else.

(Court File No. 54, attachment 9, memo by Steve Rowland, June 20, 1988).

Julia, our follow up discussion concerning the issues of racial and sexual bias that you raised during our first field session eased my concern for you. You stated that both issues are not an obstacle to your job performance and that my expectations on performance were fair based on your Territory Business Plan. Julia, I am pleased that we have cleared the air on these issues and I look forward to helping you achieve your 1993 goals.

(Court File No. 54, attachment 5, memo by Jeff England, March 8, 1993).

These statements do not indicate any racial prejudices present within the management of the defendant, nor do they suggest racial animus in the decision to terminate Julia Anderson. The circumstances present in the Chattanooga area, as shameful as they may be, do not create an inference that the defendant itself created or helped to promote racial animosity within its company. The defendant cannot be held responsible for those circumstances which are outside of its control.

 In addition, even if Mr. Rowland's alleged actions toward Ms. Anderson were dictated by racial prejudices, the evidence present in the record indicates Mr. Rowland was no longer Ms. Anderson's supervisor at the time of her termination, and Ms. Anderson fails to present any evidence demonstrating that he played any part in the decision to fire her. Because Ms. Anderson has failed to present evidence of racial animus in the decision to terminate her, even if the defendant's reason for terminating her is untrue, the Court finds the defendant will be entitled to judgment as a matter of law regarding the claim of race discrimination.

### D. *Sex Discrimination*

 The pattern for the allocation of proof in employment discrimination cases is established. *Sunstrom* at 1270. Therefore, as in a case of race discrimination, the plaintiff has the initial burden of establishing a *prima facie* case. In establishing the *prima facie* case, the plaintiff presents facts which

give rise to an inference of discrimination. The burden then shifts to the defendant to articulate a legitimate reason for its actions. After the production of such a reason, then the plaintiff has an opportunity to establish that the reason is pretext.

■ A *prima facie* case of sex discrimination has been set forth if the plaintiff proves that she was a member of a protected class; that she was discharged; that she was qualified for the position; and that she was replaced by a person outside the protected class. *Sunstrom* at 1270.

■ Even assuming that Ms. Anderson has established a *prima facie* case, she presents no evidence from which a reasonable jury could conclude she was terminated because of her sex. The plaintiff does testify about obstacles for female medical sales representatives in the Chattanooga area. However, as this Court stated previously in this opinion, this evidence does not suggest the defendant's decision to terminate her was based on her sex.

Accordingly, the defendant's motion for summary judgment regarding the sex discrimination claim will be **GRANTED.**

### E. *Unequal Pay Claim*

■ Ms. Anderson claims that while she was employed with the defendant she was paid less than the rate set by the company for her position company-wide. To establish a claim of unequal pay for equal work, the plaintiff must first establish a *prima facie* case of discriminatory compensation by proving that different wages were paid to employees of different groups for substantially equal work. *Sunstrom* at 1272.

■ In the case at hand, Ms. Anderson states in her affidavit she was hired at a starting salary which was lower than that received by two other representatives who started within the same time frame (Court File No. 54). Ms. Anderson does not provide any evidence of the education and qualification of these representatives; she does not prove these representatives were similarly situated. In addition, the plaintiff fails to provide the Court with evidence of the starting salaries of these representatives. Fur-

thermore, the record indicates Ms. Anderson received merit pay increases until, due to her alleged poor performance, she was placed in the Performance Improvement Program at which time, according to company policy, Ms. Anderson could not receive merit increases (Court File No. 36, affidavit of Steve Rowland).

The plaintiff has failed to prove a *prima facie* case of unequal pay; therefore, the defendant's motion for summary judgment regarding this claim will also be **GRANTED.**

### III. *CONCLUSION*

In conclusion, the defendant's motion for summary judgment as to the plaintiff's claims of race discrimination under Title VII and the Tennessee Human Rights Act, sex discrimination, and unequal pay will be **GRANTED.**

An Order will enter.

### *ORDER*

For the reasons set forth in the accompanying Memorandum, the Court hereby GRANTS the motion for summary judgment filed by defendant, Mead Johnson Nutritional Group, Bristol–Myers Squibb Company (Court File No. 32).

**SO ORDERED.**