**Andrew BARTLIK, Petitioner,**

**v.**

**UNITED STATES DEPARTMENT OF LABOR and Tennessee Valley Authority, Respondents.**

Nos. 93–3616, 93–3834.

United States Court of Appeals, Sixth Circuit.

Reargued Dec. 5, 1995.

Decided Jan. 12, 1996.

Eric Glitzenstein (argued and briefed), Meyer & Glitzenstein, Washington, DC, for Andrew Bartlik.

Andrew Bartlik, Brewster, NY, pro se.

William J. Stone, Barbara E. Racine (briefed), Eloise Clark, Paul Frieden (argued), U.S. Department. of Labor, Office of Solicitor, Washington, DC, Robert B. Reich, Secretary of Labor, Department of Labor, Washington, DC, for U.S. Department of Labor.

Thomas F. Fine, Sr. Litigation Atty., Brent R. Marquand (briefed), Jackson Woodall (argued and briefed), Tennessee Valley Authority, Justin M. Schwamm, Sr. (briefed), Knoxville, TN, for Tennessee Valley Authority.

Before: KENNEDY, RYAN, and NORRIS, Circuit Judges.

KENNEDY, J., delivered the opinion of the court, in which NORRIS, J., joined. RYAN, J. (pp. 104–105), delivered a separate opinion concurring in the result.

KENNEDY, Circuit Judge.

Petitioner Andrew Bartlik appeals two decisions of the Secretary of Labor (the "Secretary") that have been consolidated for the purposes of this appeal.[1] Petitioner brought an action against Tennessee Valley Authority ("TVA") under 42 U.S.C. § 5851 which prohibits nuclear licensees, such as TVA, from discriminating against an employee for raising safety concerns about nuclear facilities.[2] Concluding that petitioner failed to carry his burden of proof of discrimination, the Secretary denied the claim. Because we find that plaintiff failed to prove his *prima facie* case, we AFFIRM the Secretary's decision against him.

## I.

Safety concerns caused the shutdown of TVA Sequoya nuclear power plant ("Sequoya") in 1985. With a goal of the plant's safe and prompt startup, TVA employed petitioner Andrew Bartlik, an engineer with expertise in fire protection at nuclear facilities, to analyze fire safety issues at Sequoya in January of 1987. Petitioner attended to Sequoyah's conformance with Appendix R, the fire safety regulations of the Nuclear Regulatory Commission ("NRC")[3] until his contract expired and was not renewed on November 25, 1987.

Petitioner had been one of many engineers hired as a "staff augmentee." As such, petitioner was nominally employed by American Technical Associates ("ATA") but TVA bore supervisory responsibility over him. ATA was a "technical services firm," which provided qualified engineers on an as-needed basis. However, throughout the latter half of 1987, TVA switched from the use of "staff augmentees" in its nuclear engineering program to "managed task contracts." On account of this shift, of 1,000 staff augmentees working at Sequoyah in the last three months of 1987, only two engineers were approved as staff augmentees to work past December 31 of that year. Furthermore, because ATA could not provide engineering management, it was not suited to managed task contracts and TVA phased out its contracts with ATA as it shifted to the use of managed task contracts.

Two weeks after the expiration of petitioner's staff augmentee contract, on December 7, 1987, the NRC announced a surprise inspection of Sequoyah on the following day to investigate Sequoyah's Appendix R compliance. Lead Nuclear Engineer Henry Jones and engineers Edward Sheehy and David

---

**1.** Case No. 93–3616 is petitioner's appeal of the Secretary's final decision. Case No. 93–3834 is an appeal of the Secretary's denial of petitioner's motion for reconsideration. Since the court addresses the Secretary of Labor's final decision and order in this case, whether the Secretary properly denied petitioner's motion for reconsideration is moot. In *Bartlik v. United States Dept. of Labor*, 62 F.3d 163 (6th Cir.1995)(*en banc*) the court found that petitioner's appeal to this Court was timely filed from the Secretary's final decision and order. The Court presently hears this case, therefore, as an appeal from that final decision and order and not as an appeal of the denial of petitioner's motion to reconsider.

**2.** In 1992, Congress amended the statute, making certain adjustments in the employee protection provisions, which are only effective as to claims filed on or after October 24, 1992, and therefore have no application in this case. *See* P.L. 102–486, Title XXIX, § 2902(i), 106 Stat. 3125.

**3.** Appendix R is part of the regulations governing Domestic Licensing of Production and Utilization Facilities, 10 C.F.R. Pt. 50 (1995).

Renfroe held an immediate emergency meeting during which they concluded that Sequoyah was not in compliance with Appendix R. Late that evening, the three engineers met with Project Engineer John Hosmer to give him their findings. In answer to Hosmer's further inquiry, the engineers recommended the immediate formation of a review team to consider Appendix R documentation and requirements. Conversation then shifted to the composition of such a team. In this context, after petitioner had been put forward as a possible candidate, Hosmer said, "I don't want any contractors working on problems which they discovered."

Petitioner argues that Hosmer's statement, the occurrence of which neither the administrative law judge nor the Secretary questioned, constitutes direct evidence of retaliatory discrimination. The Secretary of Labor, however, implicitly found that Hosmer's statements were not direct evidence of discrimination. The Secretary found that petitioner could point to nothing more than Hosmer's single remark from which an inference of discrimination *might* be drawn. Particularly in light of the considerable amount of countervailing evidence, this remark was deemed not to meet the requisite burden of proof of proscribed discrimination.[4]

## II.

The scope of judicial review in this case is defined at 42 U.S.C. § 5851(c)(1) which refers the court to the Administrative Proce-

dure Act, 5 U.S.C. § 706(2). The court has the authority to set aside agency action found to be arbitrary, capricious, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A) & (E).

■ As an initial matter, it must be noted that petitioner argues that TVA retaliated against petitioner with regard to several employment decisions. The Secretary found, however, that in all but one of these decisions, petitioner failed to prove that the decision-maker even knew of petitioner's identity or activities. This finding is supported by substantial evidence. With regard to these claims, therefore, petitioner failed to prove his *prima facie* case, *see infra* note 6, and we affirm the Secretary's decision as to these charges.

■ The Secretary was of the opinion that "[o]nly one part of the record might justify an inference" of retaliatory discrimination, JA at 43, referring to Project Engineer John Hosmer's alleged statement, "I don't want any contractors working on problems which they discovered." Petitioner suggests that this is direct evidence of discrimination and points out that if there is direct evidence of discrimination, then the Secretary must shift the burden of proof to the employer who must produce evidence indicating that the adverse action was motivated by a non-discriminatory purpose. JA at 28 (Secretary of Labor's Final Decision and Order (citing *Blake v. Hatfield Elec. Co.*, Case No. 87–

---

**4.** Countervailing evidence included the following: Other workers (Sheehy and Daniels) were more prominent in their raising of Appendix R concerns but no retaliation was shown against them. JA at 33 (Final Decision and Order of the Secretary of Labor at 9 n. 6); *See Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir.1987)("employer's position is bolstered by evidence that, although other employees made similar protests ..., there was no pattern of retaliation against such employees." (citation omitted)). There was little evidence that Hosmer, who oversaw 3000 TVA and contract employees, even knew of petitioner's existence let alone knew that petitioner had raised safety issues on several occasions. JA at 34 (Final Decision and Order of the Secretary of Labor at 10); *See also* JA at 42–43 (Final Decision and Order of the Secretary of Labor at 18 (finding little reason to conclude that Dr. Charles Fox, Deputy Manager of TVA's Office of Nuclear Power, was aware of petitioner's exis-

tence at the time of alleged discrimination)). In addition, it is noteworthy that petitioner's contract had already been extended once in late August, a date following the hiring of Project Engineer John Hosmer and a date following Bartlik's raising of numerous safety concerns. Furthermore, as mentioned, petitioner's contract as a "staff augmentee" expired as TVA was in the midst of a change-over to "managed task contracts" which required the phasing out of all "staff augmentee" contracts; as a result of this change-over, all the contracts with petitioner's employer, ATA, were terminated. Finally, at times following many of his Conditions Adverse to Quality Reports ("CAQRs"), it is undisputed that petitioner was both offered full-time employment by TVA which petitioner declined and petitioner's contract as staff augmentee was extended. JA at 886–89 (deposition of George Cooper, Assistant Branch Chief of TVA's Mechanical Engineering Branch).

ERA–4, Sec. Dec. Jan. 22, 1992, slip op. at 5–6)).

We think, however, that the proffered testimony was not direct evidence of retaliatory discrimination.[5] In fact, we find that in the context of this employment action the testimony was insufficient by itself even to prove plaintiff's *prima facie* case. The elements of a *prima facie* case of retaliatory discrimination have been articulated in many cases with slight variation.[6] We think the common thread is that plaintiff must set forth facts which justify an inference of retaliatory discrimination. *See* Brief of the Secretary of Labor at 27. The evidence offered in this case, taken as true, does not justify such an inference, however. Therefore, we agree with the Secretary when he argues on appeal that petitioner failed to prove his *prima facie* case. Brief of the Secretary of Labor at 28–29, 32.[7]

The record in this case simply affords no reason for inferring that John Hosmer's decision not to hire the discoverer of an Appendix R problem at Sequoyah onto a review team whose job was to review all of Sequoyah's Appendix R problems was a matter of retaliation rather than the result of a legitimate and pragmatic policy determination. The goal of hiring a review team whose

---

5. The distinction between direct and circumstantial evidence in employment discrimination cases is not self-evident. *See* Deborah Malamud, *The Last Minuet: Disparate Treatment After* Hicks, 93 Mich. L. Rev. 2229, 2321 n. 290 (1995)(noting the problematic distinction and finding that "many courts interpret the term 'direct evidence' to mean high quality circumstantial evidence."); *see also Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1183 (2nd Cir.) *cert. denied,* 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992)("[T]he various circuits have as many definitions of 'direct evidence' as they do employment discrimination cases."). In the context of discrimination cases in this circuit, however, we have held that direct evidence is evidence which, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor." *See Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1248 (6th Cir.1995)(citing *Terbovitz v. Fiscal Court of Adair Cty.,* 825 F.2d 111, 115 (6th Cir.1987)). With direct evidence, the existence of unlawful discrimination is "patent." *Id.* The evidence here falls far short of direct evidence of retaliatory discrimination.

6. A *prima facie* case of retaliatory discrimination has been articulated as follows: *DeFord v. Secretary of Labor,* 700 F.2d 281, 286 (6th Cir. 1983)("(1) that the party charged with discrimination is an employer subject to the Act; (2) that the complaining employee was discharged or otherwise discriminated against with respect to his compensation, terms, conditions, or privileges of employment; and (3) that the alleged discrimination arose because the employee participated in an [Nuclear Regulatory Commission] proceeding under . . . the [ERA]."); *Kahn v. Secretary of Labor,* 64 F.3d 271, 277 (7th Cir.1995) (citations omitted)((1) the employer is governed by the ERA; (2) the employee was engaged in protected activity; (3) the employee was subject to an adverse employment action; and (4) a nexus exists between the protected activity and the discharge.); *Couty v. Dole,* 886 F.2d 147, 148 (8th Cir.1989)((1) engagement in protected activity; (2) defendant's awareness of plaintiff's engagement in protected activity; (3) plaintiff's subsequent discharge; and (4) that the discharge followed the protected activity so closely in time to justify an inference of retaliatory motive.).

7. Even if the petitioner had made his *prima facie* case, the Secretary points out, the TVA offered evidence of legitimate reasons for not extending or renewing petitioner's contract and petitioner failed to produce evidence that these reasons were pretextual, as would have been required to impose liability. Brief for the Secretary of Labor at 32–36. Judge Ryan, concurring, is of the opinion that Bartlik did prove a *prima facie* case and agrees with the Secretary that Bartlik still failed to prove discrimination.

We are unable to agree with Judge Ryan when he concludes that Bartlik proved the fourth prong of a *prima facie* case, a nexus between the protected activity and the adverse employment action. Judge Ryan suggests that "proximity in time" alone is sufficient, citing *Bechtel Construction Co. v. Secretary of Labor,* 50 F.3d 926 (11th Cir.1995). That case relied on *Couty v. Dole,* 886 F.2d 147 (8th Cir.1989) for the proposition that proximity in time meets the requirements of the fourth prong. *Bechtel, Couty,* and the cases *Couty* cites for support for this proposition all concerned *discharges* which followed soon after the employees' engaging in protected activity. Under such circumstances, proximity in time justifies an inference of retaliatory discrimination. There was no such discharge in this case. Bartlik was simply not rehired following the expiration of his contract. Holding temporal proximity *by itself* to be sufficient to make a *prima facie* case on these facts is not justified. Essentially, anyone hired to identify safety problems who does his job and does identify problems, whose contract is not renewed would make a *prima facie* case of discriminatory retaliation. We agree with Judge Ryan that the making of a *prima facie* case must not be onerous, but we nonetheless think it must be something more than temporal proximity under circumstances such as those that exist in this case.

members bring a new and fresh perspective to detected problems may be part of a policy untainted by unlawful discrimination. Plaintiff has adduced no evidence to belie this explanation. He has therefore offered no evidence which would justify an inference of retaliatory discrimination.

Having found that petitioner has failed to make a *prima facie* case of discrimination, we therefore **AFFIRM** the decision of the Secretary of Labor dismissing petitioner's complaint.

RYAN, Circuit Judge, concurring separately.

While I concur in the result reached in the majority opinion, I do not agree with the analytical route my colleagues take to get there.

I am entirely satisfied that Bartlik met his threshold burden of proving a *prima facie* case. The petitioner's burden at this stage is "not onerous; rather, a *prima facie* showing is 'quite easy to meet.'" *Kahn v. Secretary of Labor,* 64 F.3d 271, 277 (7th Cir.1995) (citations omitted). A *prima facie* showing requires proof that:

(1) the employment relationship is governed by the Energy Reorganization Act;

(2) the employee engaged in protected activity;

(3) the employee was subject to an adverse employment action; and

(4) a nexus exists between the protected activity and the adverse action.

*Id.; Bechtel Constr. Co. v. Secretary of Labor,* 50 F.3d 926, 934 (11th Cir.1995). Proximity in time between the protected activity and the adverse employment action is a sufficient nexus to satisfy the fourth prong. *Bechtel,* 50 F.3d at 934.

There is no dispute that the TVA is an employer subject to the ERA; that Bartlik is a covered employee; that he engaged in protected activity; that he was subject to an adverse employment action; and that there is a temporal nexus between the protected activity and Bartlik's discharge, all of which create an inference of unlawful termination. The majority opinion suggests that because the adverse employment action taken against Bartlik was a nonrenewal of his contract rather than a discharge, temporal proximity is insufficient to establish a *prima facie* showing. To me, this is a distinction without a difference. Thus, the requirements for a *prima facie* case of discrimination are met.

But just as it is clear to me that Bartlik made out a *prima facie* case, it is equally clear that the TVA articulated a legitimate nondiscriminatory reason for extending Bartlik's contract when it pointed to the change in contracting methods, and its nonrenewal of the contracts of all "staff augmentees" who did not meet strict criteria. The question then becomes whether TVA had a higher burden, that of persuasion, because Bartlik produced evidence showing that discrimination "played a role" in his discharge. *See Kahn,* 64 F.3d at 278. Bartlik's argument in this regard plainly fails. Contrary to Bartlik's suggestions, neither the ALJ nor the Secretary found that Bartlik proved that his protected activities "played a role" in the adverse employment action, and there is simply no evidence in the record that would support such a claim; certainly Hosmer's remark, that he didn't "want any contractors working on problems which they discovered," standing alone, is insufficient to amount to such a showing.

Nonetheless, I think Hosmer's remark is somewhat more significant than my colleagues suggest. The force of Hosmer's statement as evidence of unlawful discrimination can only be appreciated when it is recognized that the statement was made immediately after Hosmer asked a supervisor for recommendations for the survey team and was given Bartlik's name. Thus, the statement was not merely a general indication of employment philosophy, but was specifically directed at Bartlik. Even so, it is not direct evidence of discrimination, but only circumstantial and, as such, it was insufficient to shift the burden of persuasion to the TVA.

Accordingly, our inquiry is restricted to determining whether substantial evidence supports the Secretary's finding that the TVA proffered a legitimate, nonpretextual, nondiscriminatory reason for Bartlik's termination. This finding had ample evidentiary support.

I agree, therefore, that the decision of the Secretary of Labor should be affirmed.