**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**FREEDOM ADULT FOSTER CARE CORP., a Michigan Corporation, Defendant.**

**Civil Action No. 95–40181.**

United States District Court, E.D. Michigan, Southern Division.

June 14, 1996.

David A. Whitcomb, Detroit, MI, for Equal Employment Opportunity Commission.

Matt W. Zigler, Troy, MI, for Freedom Adult Foster Care Corp.

## ORDER AND MEMORANDUM DENYING MOTIONS FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff brought this Title VII action on behalf of Ms. Tracy Pritchard, alleging sex discrimination based on Ms. Pritchard's pregnancy. Defendant and plaintiff have filed cross-motions for summary judgment. Oral argument took place before this court on May 29, 1996. For the following reasons, this court will deny both motions.

### I. Factual Background

On October 10, 1993, defendant hired Ms. Pritchard as a direct care staff worker. Her job primarily required her to care for six developmentally disabled men, helping them with common daily activities such as cooking, cleaning, interacting with the community, etc. Her direct supervisor was Michelle Duffie. Ms. Duffie's supervisor is Kim Bishop. Ms. Bishop's supervisor is Dan Souheaver.

During the first few months of Ms. Pritchard's employment, she received good performance reviews and was recommended by Ms. Duffie for a merit raise and to be trained to become assistant manager. In January of 1994, Ms. Duffie gave Ms. Pritchard a copy of defendant's manual for managers so that

Ms. Pritchard could properly familiarize herself with it. Apparently, the manual that Ms. Pritchard received contained a pregnancy leave policy that was different from the medical leave policy.[1]

On February 1, 1994, Ms. Pritchard learned that she was pregnant. On February 5, 1994, she notified Ms. Duffie of her condition. At that time, Ms. Pritchard alleges that Ms. Duffie stated that she didn't like pregnant women working in her home around the "guys." In an affidavit, Ms. Pritchard states that Ms. Duffie apologized to her later in the day for making that statement.

Approximately one week after Ms. Duffie had been notified of Ms. Pritchard's pregnancy, she provided Ms. Pritchard with a Release of Liability form that Ms. Pritchard's doctor had to complete before she could continue to work for defendant. Around this time, Ms. Pritchard started to have complications with her pregnancy and was advised by her doctor not to work until he had examined her. Ms. Pritchard scheduled a doctor's appointment for February 24, 1994, but was unable to keep that appointment when she was stranded in northern Michigan by a snowstorm on February 23, 1994. She notified defendant that she would be unable to get her doctor to sign the form because of the storm, and therefore would be unable to work until she could see her doctor. On March 2, 1994, she saw her doctor, who then signed the form.

On March 3, 1994, Ms. Pritchard returned to work. At that time she received three written reprimands from Ms. Duffie, relating to her absence from work. Ms. Pritchard received another written reprimand on March 30, 1994, when she was late for a staff meeting because her car would not start. Ms. Pritchard alleges that these post-conception reprimands are manifestations of Ms. Duffie's changed "attitude" towards Ms. Pritchard.

On March 30, 1995, Ms. Pritchard had a meeting with Ms. Bishop concerning Ms.

---

1. Defendant contends that the policy manuals that have different pregnancy and medical leave policies are outdated. Defendant contends that in 1993, before plaintiff started working for de-

fendant, the company policy was changed so that pregnancy leave was treated the same as any other medical leave.

Duffie's treatment of Ms. Pritchard. At that meeting Ms. Pritchard told Ms. Bishop that she felt that Ms. Duffie was treating her more harshly since she learned of Ms. Pritchard's pregnancy. Ms. Bishop stated that Ms. Pritchard most likely received reprimands because she deserved them and that she was taking Ms. Duffie's actions and statements out of context. Ms. Bishop further indicated that she did not care about Ms. Pritchard's condition "from the neck down." Ms. Pritchard alleges that after the meeting Ms. Duffie indicated to her that she was angry that Ms. Pritchard had called the meeting with Ms. Bishop. Further, Ms. Pritchard alleges that Ms. Duffie stopped training her to become an assistant manager.

On April 3, 1994, Ms. Pritchard went to the emergency room due to problems with her pregnancy. On April 5, 1994, she saw her doctor, who ordered complete bed rest for her. During this time, possibly on April 6, 1994,[2] Mr. Pritchard, Ms. Pritchard's husband, called Ms. Duffie and told her that Ms. Pritchard would be unable to work because of problems in her pregnancy. Ms. Duffie told him that she would take Ms. Pritchard off the schedule and that Ms. Pritchard should call into work when she could.

After the conversation with Mr. Pritchard, Ms. Duffie completed a form providing that Ms. Pritchard was resigning. Ms. Pritchard contacted Ms. Duffie on April 14 and arranged to meet on April 15, 1994 so that Ms. Pritchard could receive her paycheck and complete some paperwork. Defendant contends that Ms. Pritchard was not terminated by defendant prior to April 15, 1994 even though Ms. Duffie believed that she wished to resign.

At the meeting, Ms. Duffie handed Ms. Pritchard the form providing that she was resigning and asked her to sign it. Ms.

Pritchard refused, stating that she wanted a leave of absence. Ms. Duffie informed her that she was not eligible for a leave of absence, but that she could reapply for a position once the baby was born.[3] Ms. Pritchard alleges that she and her husband told Ms. Duffie that they thought Ms. Duffie's actions were illegal and that Ms. Duffie stated that the company's lawyers had already approved the action. Ms. Pritchard also alleges that Ms. Duffie then stated, "I told you I don't like pregnant women working in my home around my guys."

Ms. Pritchard then filed a complaint with the EEOC, precipitating this action.

## II. Standard of Review

▪ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

---

**2.** The record is unclear if this phone conversation occurred on April 6, or shortly prior to April 6.

**3.** According to Mr. Souheaver, Ms. Pritchard was entitled to a "generic" leave under defendant's leave policy on April 15, 1996. Ms. Pritchard was not entitled to a Family Medical Leave Act leave, however, because she had not worked for defendant for one year prior to requesting the leave. Defendant asserts that Ms.

Duffie stated that Ms. Pritchard was not entitled to a leave because she thought Ms. Pritchard was requesting a Family Medical Leave Act leave. Thus, defendant asserts that the failure of Ms. Duffie to grant Ms. Pritchard a leave on April 15, 1994 was due merely to a miscommunication or honest mistake on the part of Ms. Duffie.

Mr. Souheaver contends that as soon as the error was brought to his attention, he immediately offered to place Ms. Pritchard on leave.

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990).

### III. Analysis

■ Generally, in discrimination cases, courts apply a "burden shifting" analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must

have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

■ The *McDonnell* analysis does not apply to those cases where the plaintiff has direct evidence of discrimination, however. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985); *Terbovitz v. Fiscal Court of Adair Cty., Ky.*, 825 F.2d 111, 114–15 (6th Cir.1987).

> "Direct evidence and the *McDonnell Douglas* formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." Direct evidence of discrimination, if credited by the fact finder, removes the case from *McDonnell Douglas* because the plaintiff no longer needs the inference of discrimination that arises from the prima facie case. . . .
>
> If the employer does assert an alternative justification for its employment action, however, . . . the burden shifts to the employer to prove by a preponderance of the evidence "that the adverse employment action would have been taken even in the absence of the impermissible motivation."

*Id.* at 115 (citations and footnote omitted). *See Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir.1985).

In the present case, defendant argues that, "[v]iewing the facts of this case in the light most favorable to the Plaintiff, she has failed to produce any evidence that could raise an inference that she was terminated from her employment because she was pregnant." Astoundingly, defendant ignores, and apparently expects this court to ignore, plaintiff's *direct* evidence of discrimination.

■ Plaintiff states that her direct supervisor, Ms. Duffie, told her immediately upon discovering that she was pregnant that she did not like pregnant women working for her. This statement was allegedly repeated by

Ms. Duffie when she told Ms. Pritchard that she could not have a leave of absence on April 15, 1994. Such statements demonstrate actual animus on the part of Ms. Pritchard's supervisor towards pregnant women and constitute direct evidence of discrimination. *See Lynch v. Belden & Co., Inc.,* 882 F.2d 262, 269 (7th Cir.1989) ("Direct evidence of discriminatory intent consists of actions or remarks by the defendant that reflect a discriminatory attitude."). Accordingly, this court need not use the *McDonnell Douglas* standard.[4]

On defendant's motion for summary judgment, Ms. Pritchard's allegation must be viewed as true. So viewed, those statements would allow a fact finder to conclude that Ms. Duffie refused to grant Ms. Pritchard a pregnancy leave because of an improper animus towards pregnant women at work. Accordingly, summary judgment for the defendant is inappropriate on the issue of Ms. Duffie's discriminatory intent.

Defendant also requests summary judgment on the issue of whether its official policy at the time that Ms. Pritchard was an employee of defendant violated Title VII. Defendant asserts that it superseded any improper pregnancy leave policy before plaintiff became an employee. This contention is supported by the statements of Mr. Souheaver. Plaintiff, however asserts that the improper policy was still in effect during Ms. Pritchard's employment. Ms. Pritchard alleges that she had seen and was given copies of employment manuals that contained the objectionable policy during her tenure as an employee.

■ Defendant argues that the presence of these old manuals in the workplace cannot raise an inference that the policies contained in these manuals were still being practiced

by the company. This court disagrees. The presence of the manuals, coupled with Ms. Pritchard's assertions, is sufficient to raise an inference that defendant was still practicing the improper policy.[5] It is up to the jury to decide whether these policy manuals were in defendant's workplace during Ms. Pritchard's employment because the policies contained in them were still being practiced by the defendant or merely because someone forgot to throw them away. Thus, there is a material question of fact concerning whether the improper policy was being practiced by defendant during Ms. Pritchard's employment. Defendant is not entitled to summary judgment on this issue.

■ Plaintiff also requests summary judgment, arguing that defendant has not put forth evidence demonstrating that it would have taken the same actions even if plaintiff were not pregnant, but had some other medical condition that required her to cease working. Defendant, however, asserts that Ms. Duffie did not offer Ms. Pritchard a leave of absence on April 6 because when Mr. Pritchard called her and told her that Ms. Pritchard could not work, he did not request a leave of absence, leading Ms. Duffie to believe that Ms. Pritchard wanted to resign. Defendant asserts that Ms. Duffie did not allow Ms. Pritchard to take a leave of absence on April 15 because she mistakenly believed that Ms. Pritchard was requesting a Family Medical Leave Act leave, to which she was not entitled, rather than a generic leave under defendant's company policy, to which she was entitled. If Ms. Duffie's explanations are credited, then a fact finder would be able to conclude that Ms. Duffie would have failed to allow a leave of absence even if a condition other than pregnancy had prevented her from working.[6] Thus, plaintiff

---

4. This court will note that, under the *McDonnell Douglas* standard, plaintiff has clearly raised an inference that her termination or the refusal of defendant to allow her a leave of absence was the result of discrimination against pregnant women.

5. Additionally, there may be a material question of fact concerning whether the updated manuals contained the improper policy. Apparently the pagination of the updated manual skips several page numbers in the section of the manual dealing with leaves of absence. These missing pages

numbers could be due to improper pagination resulting from sloppy editing of the old manual, or could represent that pages were removed from the updated manual after it had been issued.

6. Plaintiff argues that such a mistake is not a valid, non-discriminatory reason for Ms. Duffie's actions. Plaintiff may be mischaracterizing the nature of the mistake, however. Defendant is not arguing that Ms. Duffie, due to a mistaken belief that it was legal to do so, denied Ms. Pritchard a leave because Ms. Pritchard was

is not entitled to summary judgment on this issue.

### *ORDER*

Therefore, it is hereby **ORDERED** that plaintiff's and defendant's motions for summary judgment be **DENIED**.

**SO ORDERED.**

pregnant. Rather, defendant argues that Ms. Duffie denied Ms. Pritchard a leave because she mistakenly believed Ms. Pritchard was asking for a type of leave to which she was not entitled. Under this scenario, Ms. Duffie's decision was independent of the condition (pregnancy) that necessitated Ms. Pritchard's request for a leave. Under defendant's explanation, Ms. Duffie would have denied the leave if plaintiff had a broken leg that prevented her from working. Thus, defendant's explanation does raise a jury question.